UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NIKOLAS BAKLOUS,

        Plaintiff,

   -against-

AMTRAK and DJMJ-HARRIS/AECOM,

        Defendants.

------------------------------------------------------------X
AECOM, USA, INC., f/k/a DMJM-HARRIS, INC.,
s/h/a DJMJM-HARRIS/AECOM,

        Third-Party Plaintiff,

   -against-

SKANSKA USA CIVIL NORTHEAST INC., f/k/a
SLATTERY SKANSA, INC.,

        Third-Party Defendant.

------------------------------------------------------------X

MEMORANDUM AND ORDER

10-CV-2793
(Kuntz, J.)

**WILLIAM F. KUNTZ, II, United States District Judge**

Nikolas Baklous ("Plaintiff") commenced this action against Defendants AECOM USA, Inc., f/k/a DMJM+Harris, Inc., s/h/a/ DJMJM-HARRIS/AECOM ("AECOM") and Amtrak, alleging three causes of action for violations of N.Y. Labor Law § 240(1), N.Y. Labor Law § 241(6), and N.Y. Labor Law § 200, as well as one cause of action for common law negligence. Both AECOM and Amtrak filed cross-claims seeking indemnification and/or contribution. Amtrak moves for summary judgment to dismiss all of Plaintiff's claims asserted against it, pursuant to Federal Rule of Civil Procedure 56. AECOM similarly moves for summary

1

judgment to dismiss all of Plaintiff's claims asserted against it, as well as Amtrak's cross-claims. For the reasons stated below, Amtrak's motion for summary judgment is granted in part and denied in part and AECOM's motion for summary judgment is granted in part and denied in part.

I.   **Undisputed Facts**

   A. **Roles of the Parties**

      1. **General Contractor Skanska**

In November 2004, Amtrak entered into a construction contract with Skanska USA Civil Northeast Inc. ("Skanska") in connection with a project undertaken by Amtrak to upgrade two East River railroad tunnel emergency ventilation facilities in the vicinity of 33rd Street and First Avenue in New York City (the "Ventilation Shaft Project"). Amtrak's Rule 56.1 Statement at ¶ 12 ("Amtrak 56.1 St."). As general contractor, Skanska provided the labor, supervised and directed the demolition and construction, and controlled the means and methods of the work being performed at the Ventilation Shaft Project. *Id.* In controlling the means and methods of the work at the Ventilation Shaft Project, Skanska determined what method of demolition would be used, provided the necessary equipment, and assigned the "drill runners" their responsibilities. *Id.* at ¶ 13. Drill runners use tools such as jackhammers, chippers, and splitters to remove concrete. AECOM's Rule 56.1 Statement at ¶ 30 ("AECOM 56.1 St.").

Section 61 of Skanska's contract with Amtrak provides: "[The] Contractor shall be solely responsible for providing a safe place for the performance of the [w]ork. Amtrak assumes no responsibility or liability for the physical condition or safety of the work site or any improvements located thereon. Furthermore, Contractor shall be solely responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the [w]ork." Gaskill Aff., Ex. B at § 61.1.

Skanska foremen conducted daily job briefings with workers, discussing "specific tasks they would be working that day, [and] any specific hazards pertaining to their work." Amtrak 56.1 St. at ¶ 14. Skanska also provided all personal protective equipment to its employees, including electrically-rated gloves and boots. *Id.* Because the bedrock surface inside the ventilation shaft was often damp or wet, slippery surfaces could exist in the shaft. *Id.* at ¶ 15. As such, Skanska took measures to mitigate any risks posed by the water and silica materials. *Id.*

### 2. Construction Manager AECOM

On November 12, 2003, Amtrak entered into a services contract with AECOM wherein AECOM agreed to provide construction management services for the Ventilation Shaft Project. *Id.* at ¶ 16. The contract stated that AECOM "shall act as Amtrak's agent with respect to the [Construction Manager's] Safety Responsibilities under the Contract." Gaskill Aff., Ex. A at § 3.1.5. As to the scope of AECOM's safety responsibilities, AECOM agreed to "provide and be responsible for the requisite management, oversight, coordination and expedition of the construction processes" and to assign a Safety Engineer "who shall have full authority to act on behalf of [AECOM] at all times to periodically monitor that all construction work is being performed in accordance with standard industry practices and with Amtrak, State and Federal Laws regulating job site safety." *Id.* at §§ 2.3, 3.1.5.

Notably, AECOM's contract with Amtrak originally included a provision holding AECOM responsible for oversight of the project safety program during construction; however, both AECOM and Amtrak agreed to delete the provision from the section of the contract dealing with AECOM's project responsibilities. *Id.* at § 2.3.2.

As the Construction Manager, AECOM reviewed Skanska's Site Safety Plan and later recommended the Plan for approval to Amtrak. AECOM 56.1 St. at ¶ 22. The AECOM Site

3

Safety Engineer monitored the Ventilation Shaft Project to see that Skanska was performing its work within the guidelines set forth in the Site Safety Plan. *Id.* at ¶ 24.

AECOM's Site Safety Engineer was on site daily to inspect the worksite. Amtrak 56.1 St. at ¶ 17. When not physically present at the site, the Safety Engineer was in his office completing reports or attending to other safety engineering duties. *Id.* The AECOM Site Safety Engineer was responsible for making sure that "whatever activity was ongoing was ongoing in a safe manner." *Id.* If the AECOM Site Safety Engineer noticed a safety violation at the project, he notified the Skanska Safety Engineer or Superintendent. *Id.* If an AECOM employee noticed a Skanska employee was in imminent danger, AECOM had the authority to stop work on the project. *Id.*

### 3. Owner Amtrak

Amtrak conducted a general Safety Briefing at the start of each work day at the Ventilation Shaft Project, but never provided any direction to Skanska employees. *Id.* at ¶ 18. The primary job of the Amtrak inspectors, who did not exercise any technical expertise other than with regard to electrical grounding, was to protect the railroad and insure that Skanska's work did not impede movement of Amtrak trains. *Id.*

### 4. Plaintiff

Plaintiff was employed by Skanska as a drill runner at the Amtrak Ventilation Shaft Project. *Id.* at ¶ 19. Each morning, Plaintiff reported to his Skanska foreman upon arrival at the job site to receive work instructions. *Id.* at ¶ 20. No other entity besides Skanska instructed Plaintiff regarding his work responsibilities at the Ventilation Shaft Project. *Id.* at ¶ 21.

## B. Plaintiff's Accident

On August 17, 2009, Plaintiff was working on a Skanska crew at the Ventilation Shaft Project and was operating a 90 lb. pneumatic jackhammer in Ventilation Shaft Four. *Id.* at ¶ 23. Plaintiff received instructions from his Skanska foreman to excavate the bedrock at the bottom of the shaft, which entailed chipping at the bedrock in order to progressively lower the bedrock. *Id.* at ¶ 22. On the date of the accident giving rise to this action, Plaintiff was wearing personal protective equipment provided by Skanska, including work boots, overboots, and gloves. *Id.* at ¶ 24. Plaintiff was breaking the bedrock, progressively lowering it, causing the debris to fall into an adjacent four-and-a-half foot "trough" or "keyway" or "depression." *Id.* at ¶¶ 25–28. There were two laborers in the keyway, removing the debris. *Id.* at ¶ 28.

Because water accumulated in the ventilation shafts, the bedrock was sometimes wet and could become slippery. Bosso Aff., Ex. N at 80:2–81:3; Ex. M at 92:17–92:22; Ex. O at 52:3–15, 67:23–70:1. On August 17, 2009, Plaintiff was wearing rubber, knee-high overboots over his regular work boots. Pl.'s Rule 56.1 Statement of Disputed Facts (AECOM) at ¶ 2 ("Pl.'s 56.1 St. (AECOM)").[1] The rubber overboots Plaintiff wore that day were loose fitting, making it difficult to get a sure footing on the wet and slippery surface.[2] Baklous Aff., ¶ 2.

As Plaintiff was chipping the bedrock near the edge of the trough, the bedrock "gave away," causing the jackhammer to "[get] away" from him. *Id.* at ¶ 29–30. Plaintiff acknowledges that the entire purpose of using the jackhammer is to break up the rock. Pl.'s 56.1 Counterstatement (AECOM) at ¶ 31. As such, it was not unusual for the bedrock to crumble and

---

[1] Plaintiff submitted responses to both Amtrak's and AECOM's respective Rule 56.1 Statements. In addition to paragraph-by-paragraph responses to the statements in Amtrak's and AECOM's Rule 56.1 Statements, Plaintiff's submissions also include additional "Statements of Disputed Facts." For purposes of this memorandum and order, the Court will refer to Plaintiff's responses to the Defendants' Rule 56.1 Statements as "Pl.'s 56.1 Counterstatement (Amtrak)" and "Pl.'s 56.1 Counterstatement (AECOM)," respectively. The Court will refer to Plaintiff's "Statements of Disputed Facts" as "Pl.'s 56.1 St. (Amtrak)" and "Pl.'s 56.1 St., (AECOM)" respectively.

[2] Both Amtrak and AECOM vigorously contest this fact, asserting that Plaintiff never mentioned a slippery work surface or overly loose boots as contributing factors to his injury in his original complaint, his incident report, or his two depositions.

5

give way beneath him. Pl.'s 56.1 Counterstatement (Amtrak) at ¶ 30. The weight and force of the jackhammer pulled Plaintiff down, causing Plaintiff to drop to one knee and injure his back. AECOM 56.1 St. at ¶ 1. When the jackhammer lurched forward, Plaintiff tried to plant his right foot and stop the jackhammer's momentum, but he was unable to gain a sure foothold because of the slipperiness of the surface. Baklous Aff., at ¶ 2. Normally, Plaintiff would have let go of the jackhammer as it moved out of his control, but Plaintiff held on because he feared the jackhammer would strike and impale one of the workers in the trough. Pl.'s 56.1 Counterstatement (Amtrak) at ¶ 29.

After the accident, Plaintiff continued working and rode his motorcycle home from work. *Id.* at ¶ 32. Plaintiff did not seek medical treatment until the next day, when he visited a chiropractor who told him he had a bad sprain and issued him a back brace to wear while working. *Id.* at ¶ 33. Plaintiff did not file an incident report until August 19, 2009—two days after the incident. *Id.* at ¶ 34. The incident report states that the accident occurred when Plaintiff was "chopping out duct bank the gun slipped and [Plaintiff] felt something in his back." AECOM 56.1 St. at ¶ 34.

### C. Procedural History

On May 24, 2010, Plaintiff commenced this action against Amtrak by filing a Summons and Complaint in the Supreme Court of New York, Queens County. *Id.* at ¶ 1. Amtrak removed the action to this Court on June 17, 2010, pursuant to 28 U.S.C. § 1441. *Id.* at ¶ 2. On March 25, 2011, Plaintiff filed an amended complaint against Amtrak, alleging violations of N.Y. Labor Law §§ 200, 240, and 241(6), alleging violations of multiple provisions of Rule 23 of the Industrial Code of the State of New York. *Id.* at ¶ 4. The amended complaint also asserted a separate count for common law negligence. *Id.*

Plaintiff later re-filed the amended complaint to add AECOM as a defendant. *Id.* at ¶ 5. On April 18, 2011, Amtrak filed an answer to Plaintiff's amended complaint, including cross-claims against AECOM for indemnification and/or contribution. Joseph Decl., Ex. F. On May 23, 2011, AECOM filed an answer to Plaintiff's amended complaint, including cross-claims against Amtrak for indemnification and/or contribution. *Id.*, Ex. G.

On February 15, 2012, Amtrak and AECOM moved for summary judgment to dismiss all of Plaintiff's claims against them, respectively. AECOM also moved for summary judgment to dismiss Amtrak's cross-claims.

## II.     Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal citations and quotation marks omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily

renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

**III.     Discussion**

    **A. Plaintiff's Claims Against Amtrak**

        **1. Plaintiff's N.Y. Labor Law § 240(1) Claim Against Amtrak is Dismissed**

Plaintiff's first claim against Amtrak alleges a violation of N.Y. Labor Law § 240(1). Am. Compl. at ¶ 12. Section 240(1) of the N.Y. Labor Law provides:

> All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning, or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

Amtrak argues it cannot be held liable under § 240(1) because Plaintiff was not exposed the type of elevation-related risk covered by § 240(1), nor would the types of safety devices listed in the statute have prevented Plaintiff's accident. Mem. of Law in Supp. of Def. Amtrak's Mot. for Summ. J ("Amtrak Mem.") at 21–24. Plaintiff does not oppose Amtrak's motion for summary judgment with respect to his claim under § 240(1). Pl.'s Mem. of Law in Opp'n to Def. Amtrak's Mot. for Summ. J. at 1 ("Pl.'s Amtrak Opp."). Accordingly, the Court grants summary judgment with respect to Plaintiff's N.Y. Labor Law § 240(1) claim against Amtrak.

## 2. Genuine Disputes of Material Fact Preclude Summary Judgment as to Plaintiff's N.Y. Labor Law § 241(6) Claim Against Amtrak

Plaintiff's second claim against Amtrak states a violation of N.Y. Labor Law § 241(6). Am. Compl. at ¶ 14. N.Y. Labor Law § 241(6) applies to contractors, owners, and their agents engaged in constructing or demolishing buildings or doing any excavating in connection therewith. It provides:

> All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

N.Y. Labor Law § 241(6).

N.Y. Labor Law § 241(6) "imposes a nondelegable duty upon owners and contractors to provide reasonable and adequate protection and safety to construction workers." *Boyette v. Algonquin Gas Transmission Co.*, 952 F. Supp. 192, 195–96 (S.D.N.Y. 1997) (Conner, J.). The New York Court of Appeals has explained that for purposes of the nondelegable duty imposed by § 241(6), "a distinction must be drawn between provisions of the Industrial Code mandating compliance with concrete specifications and those that establish general safety standards by invoking the '[g]eneral descriptive terms' set forth and defined in 12 NYCRR 23-1.4(a). The former give rise to a nondelegable duty, while the latter do not." *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 505 (1993). Where a plaintiff establishes a violation of a nondelegable duty under § 241(6), an owner or general contractor may be held vicariously liable, even absent control or lack of personal notice for an opportunity to cure the dangerous condition. *Rizzuto v. L.A. Wenger Contr. Co.*, 91 N.Y.2d 343, 350 (1998). In addition, a plaintiff asserting

a cause of action under § 241(6) must allege "that the violation proximately caused his or her injuries." *Rosado v. Briarwoods Farm, Inc.*, 796 N.Y.S.2d 394, 399 (2d Dep't 2005).

Plaintiff argues that Amtrak violated § 241(6) by failing to comply with the requirements set forth in more than a dozen subdivisions of Rule 23 of the Industrial Code of the State of New York. Am. Compl. at ¶ 14. However, Plaintiff appears to concede that almost all of those subdivisions are inapplicable to the case at bar; instead, Plaintiff focuses on Rule 23-1.7(d) of the New York Industrial Code, which deals with slipping hazards. Pl.'s Amtrak Opp. at 5–8. Specifically, Rule 23-1.7(d) states "Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing." 12 N.Y.C.R.R. § 23-1.7(d). Rule 23-1.7(d) "mandates a distinct standard of conduct, rather than a general reiteration of common-law principles, and is precisely the type of 'concrete specification'" that falls within the purview of § 241(6). *Rizzuto*, 91 N.Y.2d at 350–51. As such, § 241(6) imposes a nondelegable duty upon owners and contractors to ensure work sites are free from slipping hazards.

Genuine issues of material fact exist as to whether the bedrock on which Plaintiff was standing was slippery on the day of the accident, and if so, whether the slipperiness contributed to Plaintiff's injury. In an affidavit attached to his Memorandum of Law in Opposition to Amtrak's motion for summary judgment, Plaintiff asserts that he was unable to get a sure foothold "because of the slipperiness of the surface and because of the loose-fitting rubber over boots." Pl.'s Amtrak Opp. at 5–7; Baklous Aff., at ¶ 2. As a result, Plaintiff was unable to pull

10

back on the jackhammer and thereby control its forward momentum and instead was propelled forward with the jackhammer, causing injury to his back. *Id.*

Amtrak argues that Plaintiff has fabricated a theory of liability under § 241(6) by asserting this claim for the very first time in a post-discovery affidavit, pointing out that Plaintiff never suggested in either of his depositions that the bedrock was slippery or that such slipperiness caused him to lose his footing. Reply Mem. of Law in Supp. Of Def. Amtrak's Mot. for Summ. J. at 5. More specifically, when Plaintiff was asked at his first deposition "what caused the gun to slip and you to fall," Plaintiff simply answered that "[t]he rock gave away." Joseph Decl., Ex. N at 70:15–20. Nowhere in Plaintiff's first deposition did he mention slippery conditions. At his second deposition, Plaintiff provided a more detailed explanation of the circumstances surrounding the incident:

> Number one, there's a lot of water down there, and rock. It can be very slippery when you're chipping. So as I was chipping, there was a guy in front of me, in the keyway, mucking. And the rock—the gun got away from me, like pulled me towards the hole. And it was like—normally, I would let go of the gun when it took off like that; it would be the right thing. But I couldn't because there was a man in front of me. And if I'd let go of the gun, it would've probably impaled him with the point.
>
> So I held onto it, it jerked me into the keyway. So I braced myself with my left knee, I went down on my left knee. And when I got—went to get up, I was in horrible pain, I couldn't believe the pain I was in.

Joseph Decl., Ex. O at 43:5–21.

The Second Circuit has held that "factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

However, Plaintiff's affidavit does not contradict his prior deposition testimony.[3] Plaintiff never testified in earlier depositions that the bedrock was dry on the day of the incident or that slippery conditions played no part in the incident. Although Plaintiff did not explicitly testify at his second deposition that the bedrock was slippery on the day of the incident or that he lost his footing as a result of a slippery surface, it is significant that Plaintiff mentioned that the bedrock could be very slippery while chipping. On a motion for summary judgment, the Court must construe the facts in the light most favorable to Plaintiff and must resolve all ambiguities and draw all reasonable inferences against Amtrak. *Brod*, 653 F.3d at 164. Accordingly, the Court concludes that Plaintiff has raised a genuine issue of material fact as to whether slippery conditions were a proximate cause of his injury. As the owner of the Ventilation Shaft Project job site, Amtrak had a nondelegable duty to provide a work site free from slipping hazards. Amtrak's motion for summary judgment as to Plaintiff's claim under Labor Law § 241(6) is therefore denied.

### 3. Genuine Disputes of Material Fact Preclude Summary Judgment as to Plaintiff's N.Y. Labor Law § 200 and Negligence Claims Against Amtrak

Plaintiff's third and fourth claims against Amtrak allege a violation of N.Y. Labor Law § 200 and common law negligence. Am. Compl. at ¶¶ 16–18. Section 200 of the N.Y. Labor Law states, in pertinent part:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable

---

[3] Amtrak's cases are inapposite because they involve instances of plaintiffs directly contradicting earlier deposition testimony. For instance, in *Brown*, the court rejected the plaintiff's affidavit suggesting her employer had discriminated against her based on gender where her earlier deposition testimony stated she was harassed solely due to her role in a union election. 257 F.3d at 256.

and adequate protection to all such persons. The board may make rules to carry
into effect the provisions of this section.

N.Y. Labor Law § 200(1). Section 200 is a codification of the common law duty imposed upon an owner or general contractor to provide construction workers with a safe place to work. *Lamela v. City of New York*, 560 F. Supp. 2d 214, 221 (E.D.N.Y. 2008) (Cogan, J.). As such, it is appropriate to analyze Plaintiff's § 200 and common law negligence claims simultaneously. *Id.* A cause of action arising from § 200 or common-law negligence "may arise from either dangerous or defective premises conditions at a work site or the manner in which the work is performed." *Pilato v. 866 U.N. Plaza Assocs., LLC*, 909 N.Y.S.2d 80, 82 (2d Dep't 2010).

Amtrak argues that it cannot be held liable under either § 200 or a theory of common law negligence because it is undisputed that Amtrak did not supervise, control, or direct Plaintiff's work in any way. Amtrak Mem. at 6–7. In support of its position, Amtrak cites *Comes v. New York State Elec. & Gas Corp.* for the proposition that "[w]here the alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under Labor Law § 200." 82 N.Y.2d 876, 877 (1993). However, Plaintiff contends that Amtrak is liable under § 200 and for negligence not because of the manner in which Plaintiff performed his work, but because of dangerous premises conditions at the Ventilation Shaft Project. "Where a premises condition is at issue, property owners may be held liable for a violation of Labor Law § 200 if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident." *Ortega v. Puccia*, 866 N.Y.S.2d 323, 329 (2d Dep't 2008) (citations omitted).

The Court has already concluded that there exists a genuine dispute as to whether slippery conditions in the ventilation shaft were a proximate cause of Plaintiff's injury. A careful

13

review of the record also reveals there is a genuine dispute as to whether Amtrak had actual or constructive notice of any slipperiness that might have caused Plaintiff's injury. For instance, Willie Cruz, the Skanska project superintendent assigned to the Ventilation Shaft Project at the time of Plaintiff's incident, acknowledged that Ventilation Shaft Four sometimes had "conditions that would cause the floor to be slippery." Joseph Decl., Ex. M at 7:15–8:20, 80:5–17. Michael Dunn, an Amtrak employee, testified that the work surface in Ventilation Shaft Four was sometimes wet in August of 2009. *Id.*, Ex. S at 7:7–12, 92:17–93:22. And Warren Gaskill, the AECOM Safety Engineer assigned to the Ventilation Shaft Project, testified that there had been instances where he notified Skanska's safety engineer about the accumulation of water in the ventilation shafts that could have posed risks to the workers. *Id.*, Ex. R at 11:18–12:5, 52:3–13, 69:3–70:2. Indeed, Amtrak itself acknowledges that "[a]s the bedrock surface inside the ventilation shaft was often damp or wet, slippery surfaces could exist in the shaft." Amtrak 56.1 St. at ¶ 15. Therefore, based on the record, a factfinder could reasonably conclude that Amtrak had actual or constructive notice that water in Ventilation Shaft Four posed a risk of creating slippery surfaces. Consequently, the Court denies Amtrak's motion for summary judgment as to Plaintiff's claims under N.Y. Labor Law § 200 and for common law negligence.

### B. Plaintiff's Claims and Amtrak's Crossclaims Against AECOM

#### 1. Plaintiff's N.Y. Labor Law § 240(1) Claim and Amtrak's Related Crossclaims Against AECOM Are Dismissed

AECOM argues it cannot be held liable under § 240(1) because Plaintiff was not exposed to the sort of elevation-related risk covered by § 240(1), none of the safety devices listed in the statute would have prevented Plaintiff's accident, and AECOM was not a statutory agent of the owner or general contractor within the meaning of § 240(1). Mem. of Law in Supp. of Def. AECOM's Mot. for Summ. J. ("AECOM Mem.") at 17–21. Plaintiff does not oppose AECOM's

motion for summary judgment with respect to his claim under § 240(1). Pl.'s Mem. of Law in Opp'n to Def. AECOM's Mot. for Summ. J. at 1 ("Pl.'s AECOM Opp."). Accordingly, the Court grants summary judgment with respect to Plaintiff's N.Y. Labor Law § 240(1) claim against AECOM, and all related crossclaims by Amtrak against AECOM are dismissed as moot.

### 2. Plaintiff's N.Y. Labor Law § 241(6) Claim and Amtrak's Related Crossclaims Against AECOM Are Dismissed

The nondelegable duty imposed by § 241(6) applies to owners and general contractors, but it may also apply to "statutory agents" of the owner or general contractor. *Russin v. Louis N. Picciano & Son*, 54 N.Y.2d 311, 317–18 (1981). "Only upon obtaining the authority to supervise and control does the third party fall within the class of those having nondelegable liability as an 'agent'" under § 241. *Id.*; *see also Walls v. Turner Constr. Co.*, 4 N.Y.3d 861, 864 (2005) ("[U]nless a defendant has supervisory control and authority over the work being done when the plaintiff is injured, there is no statutory agency conferring liability under the Labor Law."). The determination of whether a third party is a statutory agent of an owner or general contractor under the New York Labor Law is the same under both § 200 and § 241(6). *See Damiani v. Federated Dep't Stores, Inc.*, 804 N.Y.S.2d 103, 106 (2d Dep't 2005) ("A party is deemed to be an agent of an owner or general contractor under the Labor Law when it has supervisory control and authority over the work being done where a plaintiff is injured.") (citing §§ 200, 241(6) and *Russin*, 54 N.Y.2d at 318); *Perez v. 347 Lorimer, LLC*, 923 N.Y.S.2d 138, 139–40 (2d Dep't 2011) (applying the same standard for statutory agency to claims under §§ 200, 240(1), and 241(6)).

The Court finds that AECOM was not a statutory agent of Amtrak, the owner, or Skanska, the general contractor, within the meaning of N.Y. Labor Law § 241(6). Although AECOM exercised general supervisory responsibilities, it did not possess the authority to

supervise and control Plaintiff's work. First, it is undisputed that no other entity besides Skanska instructed Plaintiff regarding his work responsibilities at the Ventilation Shaft Project. Pl.'s 56.1 Counterstatement (AECOM) at ¶¶ 13–16; Amtrak 56.1 St. at ¶ 21. Second, although AECOM was responsible for management and coordination of the construction processes and had assigned a Safety Engineer to ensure construction work was being performed according to standard industry practices and with applicable job site safety laws, such obligations did not give AECOM the requisite control over the manner in which Plaintiff performed his work. *See Hughes v. Tishman Const. Corp.*, 836 N.Y.S.2d 86, 90–91 (1st Dep't 2007) (construction manager did not control manner in which plaintiff performed his work, despite being responsible for monitoring compliance with federal, state, and local safety rules and regulations, coordinating safety meetings, and stopping work for safety reasons); *Bonocore v. Vornado Realty Trust*, 05 Civ. 6422, 2009 WL 691933, at *5 (S.D.N.Y. Mar. 13, 2009) (Swain, J.) ("The facts that [construction manager] sought to ensure that the subcontractors were building in accordance with the design documents, that [construction manager] had a general responsibility for ensuring compliance with safety regulations, that [construction manager's] safety representatives visited the site on a daily basis and had the authority to stop work . . . create no genuine issue as to whether [construction manager] or any other Defendant exercised anything more than general supervision.").

Because AECOM did not exercise the requisite supervision and control over Plaintiff to bring it within the purview of N.Y. Labor Law § 241(6), the Court grants summary judgment to AECOM with respect to Plaintiff's Section 241(6) claims against AECOM, and all related crossclaims by Amtrak against AECOM are dismissed as moot.

### 3. Genuine Disputes of Material Fact Preclude Summary Judgment as to Plaintiff's N.Y. Labor Law § 200 and Negligence Claims and Amtrak's Related Crossclaims Against AECOM

While a property owner may be held liable under N.Y. Labor Law § 200 or a theory of common law negligence simply by causing a dangerous premises condition or having actual or constructive notice of such a condition, more is required to impose liability on a construction manager. The case law clearly establishes that where the defendant in an action asserting negligence or a violation of Labor Law § 200 due to defective premises is not the owner, liability will lie only where that defendant not only created the dangerous condition or had notice of it, but also had "control over the work site." *Mendez v. Jackson Development Group, Ltd.*, 951 N.Y.S.2d 736, 740 (2d Dep't 2012); *see also Sotomayer v. Metro. Transp. Auth.*, 938 N.Y.S.2d 640, 642 (2d Dep't 2012) ("Where a plaintiff's injuries stem not from the manner in which the work was being performed, but, rather, from a dangerous condition on the premises, a contractor may be liable in common-law negligence and under Labor Law § 200 only if it had control over the work site and either created the dangerous condition or had actual or constructive notice of it."); *White v. Village of Port Chester*, 940 N.Y.S.2d 94, 98 (2d Dep't 2012) ("A general contractor may be held liable in common-law negligence and under Labor Law § 200 if it had control over the work site and actual or constructive notice of the dangerous condition.").

Genuine disputes exist as to whether AECOM had actual or constructive notice of the slippery conditions in Ventilation Shaft Four, as well as whether AECOM had control over the work site, thereby rendering summary judgment inappropriate on Plaintiff's § 200 and negligence claims and Amtrak's related crossclaims. As noted earlier, AECOM's on-site Safety Engineer, Warren Gaskill, testified that there had been instances where he notified Skanska's safety engineer about the accumulation of water in the ventilation shafts that could have posed

risks to the workers. Joseph Decl., Ex. R at 11:18–12:5, 52:3–13, 69:3–70:2. AECOM was also responsible for ensuring that work overall was being performed in a safe way, and for reporting safety concerns to the Skanska Safety Engineer or Superintendent. Amtrak 56.1 St. at ¶ 17. These facts could lead a finder of fact to reasonably conclude that AECOM had either actual or constructive notice of the slippery conditions in Ventilation Shaft Four.

Furthermore, although AECOM lacked the authority to supervise and control the manner in which Plaintiff worked, that fact does not preclude a finding that AECOM had the requisite control over the Ventilation Shaft Project work site to trigger liability under § 200 and common law negligence. AECOM employees were on site daily, and AECOM employees had the authority to stop work if they observed an imminent danger to a worker's safety. These facts raise a triable issue of whether AECOM had enough control over the work site to trigger liability under § 200 and common law negligence. *See Mott v. Tromel Const. Corp.*, 912 N.Y.S.2d 685, 686–87 (2d Dep't 2010) (site superintendent was "present at the work site on a daily basis, conducted safety inspections, walked around the building several times each day, and had the authority to stop the work of anyone on the site if necessary," raising "triable issues of fact as to whether [defendant] exercised control over the work site and had actual or constructive notice of the alleged dangerous condition").

Because genuine issues exist as to whether AECOM had actual or constructive notice of slippery conditions in Ventilation Shaft Four and control over the work site, the Court denies AECOM's motion for summary judgment as to Plaintiff's Labor Law § 200 and common law negligence claims and Amtrak's related crossclaims against AECOM.

## IV.    Conclusion

For the reasons stated above, Plaintiff's claims under N.Y. Labor Law § 240(1) against Amtrak and AECOM, as well as Amtrak's related Crossclaims against AECOM, are dismissed with prejudice. The Court also dismisses with prejudice Plaintiff's claim under N.Y. Labor Law § 241(6) and Amtrak's related crossclaims against AECOM. The Court denies Amtrak's motion for summary judgment as to Plaintiff's N.Y. Labor § 241(6) claim against Amtrak. The Court also denies Amtrak's and AECOM's motions for summary judgment with respect to Plaintiff's N.Y. Labor Law § 200 and common law negligence claims, respectively, and with respect to Amtrak's related crossclaims against AECOM.

**SO ORDERED**

Dated: Brooklyn, New York  
      March 27, 2013

s/WFK

HON. WILLIAM F. KUNTZ, II  
United States District Judge